IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

SANDRA PEREZ,

                Plaintiff,

v.                                  CIVIL ACTION NO.   5:15-cv-13559

FIGI'S COMPANIES, INC. and
CHARMING SALES CO. ONE, INC.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Figi's Companies, Inc.'s Motion to Dismiss or, in the Alternative, for Summary Judgment* (Document 7), *Figi's Companies, Inc.'s Memorandum of Law in Support of Its Motion to Dismiss or, in the Alternative, for Summary Judgment* (Document 8), the *Plaintiff's Opposition to Figi's Companies, Inc.'s Motion to Dismiss or, in the Alternative, for Summary Judgment* (Document 34), and *Figi's Companies, Inc.'s Reply Memorandum in Support of Its Motion to Dismiss or, in the Alternative, for Summary Judgment* (Document 43).   The Court has further reviewed *Figi's Companies, Inc.'s Supplemental Memorandum of Law in Support of Its Motion for Summary Judgment* (Document 80), the *Brief of Charming Sales Co. One, Inc. Regarding Figi's Companies, Inc.'s Motion for Summary Judgment* (Document 82), and the *Plaintiff's Supplemental Brief in Further Support of her Opposition to Figi's Companies, Inc.'s Motion for Summary Judgment* (Document 83).   In addition, the Court has reviewed all attached exhibits.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The Plaintiff, Sandra Perez, initiated this action with a *Class Action Complaint* (Document 1-1) filed in the Circuit Court of Raleigh County, West Virginia, on July 1, 2015. She then filed the *Amended Class Action Complaint* (Document 1-1) on August 31, 2015. Therein, she named as defendants Figi's Companies, Inc. (Figi's) and Charming Sales Co. One, Inc. (Charming). Charming removed the matter to this Court on September 29, 2015, pursuant to the Class Action Fairness Act.

Defendant Figi's filed a motion to dismiss or for summary judgment on October 7, 2015. It attached contracts and documents in support, and the Plaintiff sought additional time to review those documents. The Court granted the Plaintiff additional time and converted the motion to one for summary judgment under Rule 12(d) of the Federal Rules of Civil Procedure on October 26, 2015. The parties engaged in discovery, and the Plaintiff filed her response in opposition to the motion for summary judgment on December 4, 2015. (Document 34.) Following another extension of time, the Defendant's reply was filed on December 18, 2015. (Document 43.) Because the Plaintiff indicated that further discovery was needed, the Court set discovery deadlines and, following a joint request for an extension, required supplemental briefs to be filed by March 28, 2016. Each party, including co-defendant Charming, submitted timely supplemental briefs.

Figi's moves to dismiss on the grounds that it purchased the assets of the business that held Ms. Perez's debt after the alleged wrongful conduct. Thus, some background regarding the sale of assets is necessary. On August 14, 2013, Figi's, Inc., Figi's Business Services, Inc., Figi's Gifts Inc., Ascena Retail Group, Inc., and Charming Shoppes, Inc., entered into an Asset Purchase

2

Agreement with Mason Companies, Inc. (Asset Purchase Agreement, Def.'s Ex. 3) (Document 17-1.) Charming Sales Co. One, Inc. was incorporated in 1980 under the name AFIG, Inc., but changed its name to Figi's Inc., shortly thereafter. It changed to the present name of Charming Sales Co. One, Inc., on October 17, 2013. Figi's Companies, Inc., was incorporated on August 14, 2013, under the name Newco Entity 1, Inc., and changed its name to Figi's Companies, Inc., on September 10, 2013. Mason Companies, Inc., the purchaser of Figi's, Inc., *et al*, is the parent company of Figi's Companies, Inc.[1]

The Asset Purchase Agreement involved the transfer of the assets of the company from Charming to Figi's for substantial consideration. The Asset Purchase Agreement also provided that Charming would retain liability for, *inter alia*, "any liabilities arising out of the operation or conduct by the Sellers or their respective Affiliates in respect of the business of the Sellers or their Respective Affiliates other than the Business, whether arising before, on, or after Closing." (APA Exhibit D, § c). Figi's assumed "liabilities related to operation of the Business from and after Closing." (APA Exhibit C, § h.) The sale closed on October 13, 2013. Charming specified that Figi's had access to personnel, books, records, premises, documents, and data in the period prior to closing, but Charming controlled the business operations until the closing date. As the buyer, Figi's was permitted to oversee business operations, and Charming was required to maintain its normal, commercially reasonable business operations.

The Plaintiff was a customer at Figi's, Inc., prior to the sale of the company, and her account was transferred from Charming to Figi's through the asset purchase transaction. A debt

---

1 For ease of reference, the Court will refer to the Defendants by their current names—Charming and Figi's, regardless of the entity's name at the time of the events in question. The Court notes, however, that Charming was called Figi's, Inc., at the time it communicated with the Plaintiff.

collection letter dated September 6, 2013, was mailed to the Plaintiff on letterhead for "Figi's Inc." The letter, titled "FINAL NOTICE," asserted that the Plaintiff's alleged debt of $73.44 would be sent to a collection agency, reported to credit bureaus, and that a collection fee of up to $29.00 could be added unless the Plaintiff made a payment within fourteen (14) days.[2] (Sept. 9, 2013 Letter, att'd as Ex. to Pl.'s Compl.) (Document 1-1.) Three weeks after that letter, according to company procedures, her account was referred to a third-party debt collector. Ms. Perez received a letter dated October 2, 2013, from Alliance Collection Agencies, Inc., indicating a balance due of $92.53, an addition of $19.09 above her alleged debt on September 6, 2013. (Document 83-1.)

Third-party debt collectors continued to attempt to collect Ms. Perez's alleged debt and a collection fee until April 2014. Twenty-three telephone calls were made to Ms. Perez between October 7, 2013, and January 30, 2014, twenty of which were after the closing date, most with messages left regarding the alleged debt. Brad Lieders, a Figi's employee involved with debt collection,[3] stated that Figi's deleted collection fees from Ms. Perez's account in April 2014. (B. Lieders Depo. at 97::9–11) (Document 80-14.) Another Figi's employee indicated that Figi's stopped charging West Virginia customers collection fees on approximately November 8, 2013, and believed that third party debt collectors would have been instructed to stop charging such fees around the same time. (J. Fesenmaier Depo, at 27:6–28–17) (Document 80-10.)

---

[2] Charming had instituted a collection fee of up to $29.00 for each order referred to a collection agency in 2010. This fee was collected both by direct collections employees and by collection agencies with which Charming contracted. Figi's maintained the contracts with collection agencies after the asset purchase, and discussions took place during the pre-closing period with respect to the legality of certain fees.

[3] Mr. Lieders was employed by Figi's, Inc., now Charming, prior to the sale, and continued to work for Figi's Companies Inc. after the sale.

4

## STANDARD OF REVIEW

The well-established standard for consideration of a motion for summary judgment is that summary judgment should be granted if the record, including the pleadings and other filings, discovery material, depositions, and affidavits, "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); see also Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hoschar v. Appalachian Power Co., 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. Anderson, 477 U.S. at 248; News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor. FDIC v. Cashion, 720 F.3d 169, 180 (4th Cir. 2013).

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp., 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the non-moving party. Hoschar, 739 F.3d at 169. However, the non-moving party must satisfy its burden of showing a genuine factual dispute by offering more than "[m]ere speculation" or a "scintilla of evidence" in support of its position. Anderson, 477 U.S. at 252; JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. Anderson, 477 U.S. at

250. On the other hand, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322–23.

## DISCUSSION

Figi's asserts that it is entitled to judgment as a matter of law because the September 9, 2013 letter that the Plaintiff alleges violated the West Virginia Consumer Credit Protection Act (WVCCPA) pre-dates the closing date on which Figi's finalized the asset purchase and took control of the company. Charming filed a brief agreeing that, "consistent with the language of the Asset Purchase Agreement and Charming's supplemental discovery responses, liabilities associated with pre-closing collection activities were the responsibility of Charming." (Charming Br. at 4.) The Plaintiff argues that the terms of the Asset Purchase Agreement permitted Figi's to oversee company operations and could be interpreted to find Figi's liable for pre-closing conduct, that Figi's is liable as an assignee of Ms. Perez's account, and that Figi's continued to violate Ms. Perez's rights under the WVCCPA for several months after the closing date.

### A. *Pre-Closing Liability*

The Court finds that the Asset Purchase Agreement unambiguously provides for the seller, Charming, to retain liability for pre-closing conduct. Section 1.4 provides that Figi's agrees to assume liabilities "(a) to the extent arising after the Closing with respect to the Acquired Assets or (b) listed on Exhibit C (collectively, the "Assumed Liabilities") and for the sake of clarity, which are not included in the Retained Liabilities." (APA, § 1.4.) Exhibit C, "Assumed Liabilities," includes "liabilities related to operation of the Business from and after Closing." (APA Exhibit

6

C, § h.) Exhibit D, "Retained Liabilities," includes "any liabilities or obligations of the Sellers or any of its Affiliates of any kind or nature, contingent or actual, existing on the Closing Date or arising out of the use, ownership, possession or operation of the Acquired Assets or the conduct of the Business prior to the Closing Date, excepting the Assumed Liabilities." (APA Exhibit D, § a).

Under both West Virginia and Delaware law,[4] unambiguous contract terms are controlling and must be construed according to their plain meaning. *See, e.g., GMG Capital Investments, LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 780 (Del. 2012*); Fraternal Order of Police, Lodge No. 69 v. City of Fairmont*, 468 S.E.2d 712, 715 (W. Va. 1996); *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1009 (3d Cir. 1980). When contract language is ambiguous, the intent of the parties may be derived from extrinsic evidence. *GMG Capital*, 36 A.3d at 780; *Lee v. Lee*, 721 S.E.2d 53, 57 (W. Va. 2011).

Read as a whole, the Court finds the language of the Asset Purchase Agreement to be clear and unambiguous with respect to liability for pre-closing business operations, including debt collection efforts. Even if the language were ambiguous, the Plaintiff has presented no evidence to suggest that the parties intended Figi's to be liable for such conduct. Indeed, both parties to the contract agree that the contract provides for Charming to retain liability for pre-closing debt collection activity. The Plaintiff argues that Figi's should be liable on other grounds, including as an assignee of the Plaintiff's account. Absent a contract, the precedent cited by the Plaintiff might permit Figi's to be held liable for unlawful collection activity that took place before it owned the Plaintiff's account. However, Figi's and Charming contracted around that precedent to place

---

4 The Asset Purchase Agreement specifies that Delaware law applies with regard to the construction and enforcement of the contract. (APA at § 14.9.)

liability with Charming, and the Court must give effect to that contract. Thus, Figi's may not be held liable for the September, 2013 letter or other pre-closing conduct.[5]

### B. Post-Closing Conduct

In addition to the September 9, 2013 letter that threatened to add a collection fee to Ms. Perez's account, the Plaintiff has presented evidence that a collection fee was, in fact, added to Ms. Perez's account. Figi's' representatives admitted that Figi's, or the collection agencies it contracted with, continued to attempt to collect the fee until April of 2014, when the fee was removed from Ms. Perez's account. Twenty-three debt collection calls were made to Ms. Perez after Figi's had closed on the asset purchase and taken over the account, all during a time frame when Figi's employees admit the collection fee remained on Ms. Perez's account. Accordingly, the Court finds that the Plaintiff has met her burden of demonstrating that material questions of fact remain to be considered by a jury regarding post-closing conduct.

## CONCLUSION

WHEREFORE, following thorough review and careful consideration, the Court **ORDERS** that *Figi's Companies, Inc.'s Motion to Dismiss or, in the Alternative, for Summary Judgment* (Document 7) be **GRANTED IN PART AND DENIED IN PART**. Specifically, the Court **ORDERS** that the motion be **GRANTED** as to collection activity prior to October 13, 2013, and **DENIED** as to any collection activity subsequent to October 13, 2013.

---

[5] Given the Court's findings in Section B, it is unnecessary at this stage to determine whether Figi's would remain a necessary party due to the possibility that its interests as the current owner of the Plaintiff's account could be impacted by the outcome of this litigation.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: June 13, 2016

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA